# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

HUGO ROSALES,               )
                            )     Case No. CV 11-10088-JEM
              Petitioner,   )
                            )     MEMORANDUM OPINION AND ORDER
         v.                 )
                            )
FRED FIGUEROA, Warden,      )
                            )
              Respondent.   )
_____ )

## PROCEEDINGS

On December 6, 2011, Hugo Rosales ("Petitioner"), a prisoner in state custody, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. Section 2254 ("Petition").  On January 11, 2012, Respondent filed an Answer and lodged the pertinent state records. Petitioner did not file a Reply.

Pursuant to 28 U.S.C. § 636(c), both parties consented to proceed before this Magistrate Judge.  For the reasons set forth below, the Court concludes that the Petition should be denied.

## PRIOR PROCEEDINGS

A Los Angeles County Superior Court jury convicted Petitioner of attempted second degree robbery (Cal. Penal Code §§ 221, 664), with a finding that Petitioner personally used

a deadly weapon in the course of the crime (Cal. Penal Code § 12022(b)(1)).  Petitioner admitted several prior conviction allegations.  (1 Clerk's Transcript ("CT") at 127, 129.) Petitioner was sentenced to state prison for a term of ten years.  (1CT at 130-32.)

Petitioner appealed, and the California Court of Appeal affirmed the judgment as to the conviction, but reversed the findings on the prior conviction allegations because Petitioner's waiver of rights had been inadequate. The court remanded for a new trial on the prior conviction allegations.  (Respondent's Lodged Document ("LD") 6.)

Petitioner filed a petition for review in the California Supreme Court (LD 7), which was denied on December 1, 2010.  (LD 8.)

On March 1, 2011, Petitioner was properly advised of his rights regarding the prior conviction allegations, and he again admitted the allegations.  He was re-sentenced to ten years in state prison.  (LD 9.)  On March 7, 2011, the trial court re-calculated Petitioner's presentence custody credits.  (LD 10.)

On December 6, 2011, Petitioner filed the instant Petition.

## PETITIONER'S CLAIM

The trial court erred in refusing to exclude "certainty of identification" as one of the factors for evaluating eyewitness identification in CALJIC No. 2.92.  (Petition at 5.)

## SUMMARY OF EVIDENCE AT TRIAL

### A.    Prosecution Evidence

On September 27, 2009, at approximately 9:50 p.m., Mauricio Garcia was near the corner of Bayview Avenue and Anaheim Street in Wilmington.  (1 Reporter's Transcript ("RT") at 37-38.)  He was cleaning the cart he used in selling potato chips.  (1 RT at 38-39.)

Petitioner came up behind Garcia and said, "Give me all the money you have."  (1 RT at 39; see 1 RT at 44.)  Garcia saw that Petitioner had an eight-inch knife.  (1 RT at 39-40.) Petitioner was five feet and seven or eight inches tall, Hispanic, with very short hair.  (1 RT at 44.)

1     Petitioner tried to grab Garcia, and Garcia pushed Petitioner away with the cart.  (1

2  RT at 40.)  He touched Petitioner's body with the cart.  (1 RT at 42, 48.)

3     Garcia ran toward Anaheim.  (1 RT at 42.)  Garcia saw Petitioner wanted to grab

4  Garcia's girlfriend, so Garcia grabbed a pipe that was approximately four feet long.  (1 RT at

5  42.)  When Petitioner saw the pipe, he ran north on Bayview and went down an alley.  (1 RT

6  at 42-43.)  Garcia ran after him but stopped after a short distance.  (1 RT at 49.)  Garcia

7  saw Petitioner's face from arm's length away; there was plenty of light.  ( 1 RT at 43.)

8  Garcia had two minutes to look at Petitioner.  (1 RT at 43-44.)

9     Donald Galaz was driving in the area at the time and saw Garcia and Petitioner

10  running in circles; Petitioner was holding a knife.  (1 RT at 57-59, 63.)  Galaz called 911.  (1

11  RT at 61.)[1]  Galaz said Petitioner was short, Hispanic, and bald.  (1 CT at 45; 1 RT at 59.)

12  He appeared to be eighteen to twenty years old.  (1 CT at 46.)[2]  He was wearing a gray t-

13  shirt and blue jeans.  (1 CT at 45.)  Petitioner was "winded" and was walking with a mild

14  limp.  (1 CT at 45-46; 1 RT at 65.)  Galaz saw Petitioner go down an alley between Bayview

15  and McDonald Avenue from the area of Anaheim.  (1 CT at 48; 1 RT at 70.)

16     At about 10:15 p.m., on McDonald Avenue, just north of F Street, Los Angeles Police

17  Officer Edwin Nelson saw Petitioner.  (1 RT at 77-78.)  Petitioner was wearing a gray t-shirt

18  and blue jeans.  (1 RT at 78.)  Petitioner was sweating, nervous, and breathing heavily.  (1

19  RT at 79-80.)  Petitioner was detained.  (1 RT at 80.)

20     Later that night, the police took Garcia to a field showup, where he identified

21  Petitioner as the person who tried to rob him.  (1 RT at 52-53, 55.)  During the initial

22  encounter, Petitioner had been wearing a hooded sweatshirt that was dark blue or black, but

23  _____

24     [1]  A CD of the call and a transcript were marked as exhibits (People's Exhibits 2, 3); the CD
25  was played for the jury and was admitted into evidence.  (1 RT at 61-63, 65, 71, 87; see 1 CT
    at 44-51 (People's Exhibit 3).)

26
27     [2]  The parties stipulated that Petitioner was born June 19, 1978; therefore, he was thirty-one
    years old at the time of the offense.

28                                                  3

1   at the time of the showup Petitioner was wearing a different color shirt.  (1 RT at 46, 55.)

2   Garcia was "[a] hundred percent" sure of his identification.  (1 RT at 55.)

3         Galaz also was taken to see a suspect, but he was unable to make an identification.

4   (1 RT at 72-73.)  Galaz never saw the face of the man with the knife.  (1 RT at 59, 76.)

5         Officer Thomas Whitmore took Petitioner to the station for booking.  (1 RT at 80-82.)

6   Petitioner had a pronounced limp that became worse.  (1 RT at 83.)  At one point, Officer

7   Whitmore had to assist Petitioner with his walking.  (1 RT at 83.)  Petitioner was taken to

8   receive medical care, and he told two different physicians that he did not know how he had

9   hurt himself.  (1 RT at 83-84.)  Petitioner's left ankle was swollen.  (1 RT at 85.)

10        At the preliminary hearing, Garcia did not identify Petitioner because he was afraid.

11  (1 RT at 45.)  He and his family worked in the area of Bayview and Anaheim, and he was

12  afraid of revenge.  (1 RT at 45.)  By the time of trial, Garcia was no longer afraid because he

13  no longer worked in that area.  (1 RT at 45.)  At the preliminary hearing, he said the attacker

14  had eyes that were a different color than Petitioner's, and the attacker had stains or

15  markings on his face that Petitioner did not have.  (1 RT at 46-47.)

16        At trial, Garcia identified Petitioner in court as the person who tried to rob him. (1 RT

17  at 44.)  He was "sure" that Petitioner was the person who tried to rob him.  (1 RT at 45-46.)

18  Galaz did not identify Petitioner at trial.  (1 RT at 73.)

19      **B.**    **Defense**

20        Petitioner rested without presenting any witnesses.  (1 RT at 87.)

21                  **STANDARD OF REVIEW**

22        The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs the

23  Court's consideration of Petitioner's cognizable federal claims.  28 U.S.C. § 2254(d), as

24  amended by AEDPA, states:

25        An application for a writ of habeas corpus on behalf of a person in custody

26        pursuant to the judgment of a State court shall not be granted with respect to

27        any claim that was adjudicated on the merits in State court proceedings unless

28                    4

the adjudication of the claim – (1) resulted in a decision that was contrary to,
or involved an unreasonable application of, clearly established Federal law, as
determined by the Supreme Court of the United States; or (2) resulted in a
decision that was based on an unreasonable determination of the facts in light
of the evidence presented in the State court proceeding.

In Williams v. Taylor, 529 U.S. 362 (2000), the United States Supreme Court held
that a state court's decision can be contrary to federal law if it either (1) fails to apply the
correct controlling authority, or (2) applies the controlling authority to a case involving facts
materially indistinguishable from those in a controlling case, but nonetheless reaches a
different result. Id. at 405-06. A state court's decision can involve an unreasonable
application of federal law if it either (1) correctly identifies the governing rule but then applies
it to a new set of facts in a way that is objectively unreasonable, or (2) extends or fails to
extend a clearly established legal principle to a new context in a way that is objectively
unreasonable. Id. at 407-08. The Supreme Court has admonished courts against equating
the term "unreasonable application" with "clear error." "These two standards . . . are not the
same. The gloss of clear error fails to give proper deference to state courts by conflating
error (even clear error) with unreasonableness." Lockyer v. Andrade, 538 U.S. 63, 75
(2003). Instead, in this context, habeas relief may issue only if the state court's application
of federal law was "objectively unreasonable." Id. "A state court's determination that a
claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could
disagree' on the correctness of the state court's decision." Harrington v. Richter, __ U.S.
__, __, 131 S. Ct. 770, 786 (2011).

Under AEDPA, the "clearly established Federal law" that controls federal habeas
review of state court decisions consists of holdings (as opposed to dicta) of Supreme Court
decisions "as of the time of the relevant state-court decision." Williams, 529 U.S. at 412 ("§
2254(d)(i) restricts the source of clearly established law to this Court's jurisprudence"); see
also Andrade, 538 U.S. at 71. If there is no Supreme Court precedent that controls a legal

1   issue raised by a habeas petitioner in state court, the state court's decision cannot be

2   contrary to, or an unreasonable application of, clearly established federal law.  Wright v. Van

3   Patten, 552 U.S. 120, 125-26 (2008) (per curiam); see also Carey v. Musladin, 549 U.S. 70,

4   76-77 (2006).  A state court need not cite or even be aware of the controlling Supreme

5   Court cases, "so long as neither the reasoning nor the result of the state-court decision

6   contradicts them."  Early v. Packer, 537 U.S. 3, 8 (2002) (per curiam); see also Bell v. Cone,

7   543 U.S. 447, 455 (2005) (per curiam).

8        A state court's silent denial of federal claims constitutes a denial "on the merits" for

9   purposes of federal habeas review, and the AEDPA deferential standard of review applies.

10  Harrington, 131 S. Ct. at 784-85.  Where no reasoned decision is available, the habeas

11  petitioner has the burden of "showing there was no reasonable basis for the state court to

12  deny relief." Id. at 784.

13       Under the "look through" doctrine, federal habeas courts look through a state court's

14  silent decision to the last reasoned decision of a lower state court, and apply the AEDPA

15  standard to that decision.  See Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991) ("Where there

16  has been one reasoned state judgment rejecting a federal claim, later unexplained orders

17  upholding the judgment or rejecting the same claim rest upon the same ground.").

18       Petitioner presented his instructional error claim to the state courts on direct appeal.

19  (LD 3, 7.)  The California Court of Appeal denied his claim in a reasoned decision, and the

20  California Supreme Court summarily denied review.  (LD 6, 8.)  Thus, the last reasoned

21  decision regarding the claim asserted in the Petition is the California Court of Appeal's

22  decision on direct review.  The Court, therefore, will review that decision under the AEDPA

23  standards.  See Ylst, 501 U.S. at 803.

24                              **DISCUSSION**

25  **I.     GROUND ONE DOES NOT WARRANT FEDERAL HABEAS RELIEF.**

26       In his sole claim, Petitioner contends the trial court should have granted his request

27  to modify the instruction.  (Petition at 5.)  Petitioner fails to allege a federal question and,

28                                      6

1 therefore, his claim is not cognizable. In any event, the California Court of Appeal

2 reasonably concluded that the trial court's instruction was proper as given, and any alleged

3 error was harmless.

4       **A.    Background**

5       After the close of the evidence, Petitioner's trial counsel asked the court to modify

6 CALJIC No. 2.92,which delineates factors to consider in evaluating eyewitness testimony.

7 Counsel asked the court to delete "[t]he extent to which the witness is either certain or

8 uncertain of the identification" as a factor. Counsel asserted that certainty was not an

9 indicator of reliability, citing out of state case law and a report by the California Commission

10 on Fair Administration of Justice. (1 RT at 92-93.) The court denied the request, citing

11 People v. Wright, 45 Cal.3d 1126 (1988) (1 RT at 93-94), and read CALJIC No. 292 to the

12 jury without modification. (1 CT at 95-97.)[3]

13 _____

14    [3] CALJIC No. 2.92 was given as follows:

15       Eyewitness testimony has been received in this trial for the purpose of identifying
   the defendant as the perpetrator of the crime charged. In determining the weight to be

16    given eyewitness identification testimony, you should consider the believability of the
   eyewitness as well as other factors which bear upon the accuracy of the witness'

17    identification of the defendant, including, but not limited to, any of the following:

18       The opportunity of the witness to observe the alleged criminal act and the
   perpetrator of the act;

19       The stress, if any, to which the witness was subjected at the time of the
   observation;

20       The witness' ability, following the observation, to provide a description of the
   perpetrator of the act;

21       The extent to which the defendant either fits or does not fit the description of the
   perpetrator previously given by the witness;

22       The cross-racial or ethnic nature of the identification;

23       The witness' capacity to make an identification;
      Evidence relating to the witness' ability to identify other alleged perpetrators of

24    the criminal act;
      Whether the witness was able to identify the alleged perpetrator in a photographic

25    or physical lineup;

26       The period of time between the alleged criminal act and the witness' identification;
      Whether the witness had prior contacts with the alleged perpetrator;

27                                        (continued...)

28                                         7

**B.** **California Court of Appeal's Decision**

The California Court of Appeal rejected Petitioner's claim, as follows:

On appeal, defendant contends the trial court violated his federal constitutional rights to due process and a jury trial under the Fourteenth and Sixth Amendments by refusing to eliminate the standard instruction's reference to the witness's certainty (or uncertainty) of the identification as one of the multiple non-exclusive factors for consideration.  Our review discloses neither error nor prejudice.

In *Neil v. Biggers* (1972) 409 U.S. 188, the Supreme Court identified various factors to be considered in evaluating the likelihood of misidentification in connection with a pretrial identification, "includ[ing] the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." (*Id.* at pp. 199-200, emphasis added.)  As the trial court pointed out, California authorities have repeatedly rejected similar challenges to CALJIC No. 2.92. For instance, in *People v. Johnson* (1992) 3 Cal.4th 1183, 1230-1232, the California Supreme Court found the trial court did not err in instructing the jury on the certainty/uncertainty factor. (*See also People v. Kennedy* (2005) 36 Cal.4th 595, 610.)

---

[3](...continued)
The extent to which the witness is either certain or uncertain of the identification; Whether the witness' identification is in fact the product of his/her own recollection; and
Any other evidence relating to the witness' ability to make an identification.

(1CT at 95-97.)

Defendant asserts these authorities have become outdated in light of recent expert findings such as contained in the report relied upon at trial.[4] However, as our colleagues in the First District explain in *People v. Sullivan* (2007) 151 Cal. App. 4th 524 (*Sullivan*), that approach would be contrary to the one prescribed by our Supreme Court in *People v. Wright* (1988) 45 Cal.3d 1126 (*Wright*), which "held that 'a proper instruction on eyewitness identification factors should focus the jury's attention on facts relevant to its determination of the existence of reasonable doubt regarding identification, by listing, in a neutral manner, the relevant factors supported by the evidence. [¶] The instruction should not take a position as to the impact of each of the psychological factors listed.'" (*Sullivan, supra*, 151 Cal. App. 4th at pp. 561-562.) Not only did the Wright court approve CALJIC No. 2.92, but it explained that CALJIC No. 2.92, when appropriately modified to take into account the evidence presented at trial, "'will usually provide sufficient guidance on eyewitness identification factors.'" (*Sullivan, supra*, at p. 562, quoting *People v. Gaglione* (1994) 26 Cal. App. 4th 1291, 1303,[5] citing *Wright, supra*, 45 Cal.3d at p. 1141.)

Defendant does not adduce any contrary California authority, but relies on three decisions from other states, including *Brodes v. State* (2005) 279 Ga. 435 [614 S.E.2d 766], in which a divided Georgia Supreme Court advised its state trial courts "to refrain from informing jurors they may consider a witness's level of certainty when instructing them on the factors that may be considered in deciding the reliability of that identification." (*Id.* at p. 442.) The majority's holding was made "[i]n light of the scientifically-documented lack of correlation between a witness's certainty in his or her identification of someone as the perpetrator of a crime and the accuracy of that identification, and the critical importance of accurate jury instructions" to guide the jury. (*Ibid.*)

---

[4] It does not appear that the report was presented to the trial court.

[5] Disapproved on another ground in *People v. Martinez* (1995) 11 Cal.4th 434, 452.

1    Of course, neither the opinions of another state's appellate courts, nor those of

2    lower federal courts, are controlling.  (*People v. Williams* (1997) 16 Cal.4th 153, 190,

3    195; *People v. Zapien* (1993) 4 Cal.4th 929, 989.)  We find such an analysis at odds

4    with the unambiguous holding and rationale in *Wright* because it would require the

5    taking of a partisan position on the impact of a specific psychological factor listed as

6    bearing on eyewitness believability.  (*See Wright, supra*, 45 Cal.3d at p. 1141;

7    *Sullivan, supra*, 151 Cal. App. 4th at pp. 561-562.)  Moreover, defendant's position

8    contains an inherent flaw, as identified by the trial court – elimination of the neutral

9    certainty/uncertainty factor would prevent the court from instructing the jury that a

10   witness's lack of certainty should be taken into account in assessing the witness's

11   believability.

12    We further hold that refusal to modify the pattern was nonprejudicial, whether

13   assessed in terms of *People v. Watson* (1956) 46 Cal.2d 818, 836, "which asks

14   whether it is reasonably probable appellant would have achieved a more favorable

15   result if the court had not given the instruction" (*People v. Lawson* (2005) 131 Cal.

16   App. 4th 1242, 1249, fn. 7), or the harmless beyond-a-reasonable-doubt standard for

17   federal constitutional error under *Chapman v. California* (1967) 386 U.S. 18, 24.

18    The salient point here is not merely whether defendant's conviction hinged on

19   eyewitness identification, but whether the presence of the certainly/uncertainly factor

20   caused prejudice under the *Watson* or *Chapman* standards.  We note the challenged

21   language in CALJIC No. 2.92 did not foreclose, or significantly limit, defendant's

22   argument as to the credibility of Garcia's in-court eyewitness identification.  The key

23   component of that argument was that Garcia was not credible because he was

24   contradicting his preliminary hearing testimony, in which he testified under oath that

25   he could not identify defendant.  CALJIC No. 2.20 on witness believability identified

26   prior inconsistent statements as bearing on credibility, and CALJIC No. 2.21.2

27   instructed the jury that it could reject the whole testimony of a witness who willfully

28

gave false testimony on a material point.  Additionally, CALJIC No. 2.92 itself identified other factors on which defense counsel relied – the witness's opportunity to observe the perpetrator of the act and the stress to which the witness was subjected at the time of the observation.  Finally, elimination of the certainty/uncertainty factor would not have prevented the prosecution from relying on Garcia's certainty.  The pattern instruction makes clear that the enumerated factors are not exclusive, and the jury may consider "[a]ny other evidence relating to the witness' ability to make an identification."

(LD 6 at 6-9.)

### C.    Analysis

A challenge to jury instructions does not generally state a federal constitutional claim. See Gutierrez v. Griggs, 695 F.2d 1195, 1197 (9th Cir. 1983); see also Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985).  Habeas corpus is unavailable for alleged error in the interpretation or application of state law.  Estelle v. McGuire, 502 U.S. 62, 67-68 (1981). Here, Petitioner does not even allege the violation of any federal constitutional right. (Petition at 5.)  Therefore, his claim is not cognizable.

Even assuming Petitioner had alleged a federal constitutional violation, his claim was reasonably rejected by the state courts.  In assessing whether jury instructions correctly convey the law, a reviewing court must look to the instructions as a whole to see whether there is a "reasonable likelihood" the jury understood the instructions in a way that violated the petitioner's federal constitutional rights.  Estelle, 502 U.S. at 72; Boyde v. California, 494 U.S. 370, 380 (1990).  Thus, "the . . . question . . . is 'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.'" Estelle, 502 U.S. at 72 (quoting Cupp v. Naughten, 414 U.S. 141, 147 (1973)).  In evaluating jury instructions, courts should "not engage in a technical parsing of this language of the instructions, but instead approach the instructions in the same way that the jury would – with a 'commonsense understanding of the instructions in light of all that has taken place at the

1    trial.'"  Johnson v. Texas, 509 U.S. 350, 368 (1993) (citation omitted, quoting Boyde, 494

2    U.S. at 381).

3         Here, the California Court of Appeal concluded that the inclusion of the "certainty of

4    identification" factor was not an error and rejected Petitioner's claim.  As the Court of Appeal

5    noted, the Supreme Court has required courts to consider, in determining reliability of

6    pretrial identification, "the level of certainty demonstrated by the witness at the

7    confrontation."  Neil v. Biggers, 409 U.S. 188, 199-200 (1972).  Thus, the only Supreme

8    Court authority that touches remotely on this issue supports the inclusion of the "certainty of

9    identification" factor.  Moreover, the factor on certainty was given in neutral language, and it

10    was left to the parties to draw inferences from it.  Indeed, as the Court of Appeal noted,

11    eliminating the factors would prevent the jury from considering lack of certainty in evaluating

12    eyewitness testimony.

13         For these reasons, numerous district courts, citing Neil v. Biggers, have held that

14    California courts reasonably rejected the same claim raised by Petitioner in this case.

15    Jordan v. Hedgpeth, 2011 U.S. Dist. LEXIS 59229, at *23-*26 (C.D. Cal. May 27, 2011)

16    (also noting factor is stated neutrally); Alvarez v. Harrington, 2011 U.S. Dist. LEXIS 12866,

17    at *32-*34 (C.D. Cal. Jan. 5, 2011) (finding factor compatible with Neil v. Biggers); Allen v.

18    Smelosky, 2010 U.S. Dist. LEXIS 115498, at *17-*21 (C.D. Cal. May 17, 2010); Santoyo v.

19    Hedpath, 2009 U.S. Dist. LEXIS 92690, at *20-*26 (C.D. Cal. Sep. 8, 2009); Gutierrez v.

20    Adams, 2008 U.S. Dist. LEXIS 118713, at *18-*20 (C.D. Cal. Apr. 15, 2008); accord People

21    v. Johnson, 3 Cal.4th 1183, 1231-32 (1992); People v. Gaglione, 26 Cal. App. 4th 1291,

22    1302-03 (1994), disapproved on other grounds in People v. Martinez, 11 Cal.4th 434, 452

23    (1995); People v. Sullivan, 151 Cal. App. 4th 524, 561-62 (2007).

24         Under Neil v. Biggers, the trial court properly gave CALJIC No. 2.92 with the certainty

25    factor included.  The instruction gave the factor in neutral terms and did not take a position

26    on how the factor should be weighed in terms of reliability.  The inclusion of the certainty

27

28

1  factor did not so infect the trial as to violate due process.  Estelle, 502 U.S. at 72.

2  Accordingly, the Court of Appeal reasonably concluded no error occurred.

3        Moreover, to the extent that there was any error, it was harmless.  See Fry v. Pliler,

4  551 U.S. 112, 121-22 (2007); Brecht v. Abrahamson, 507 U.S. 619, 637-38 (1993); Larson

5  v. Palmateer, 515 F.3d 1057, 1064 (9th Cir. 2008).  In order to show prejudice, a petitioner

6  must show there is "a reasonable probability" that the jury would have reached a different

7  result but for the alleged error.  Clark v. Brown, 450 F.3d 898, 916 (9th Cir. 2006).

8        Here, the evidence of identification was strong.  Garcia unequivocally identified

9  Petitioner right after the attack and at trial.  (1 RT at 44-46, 55.)  Moreover, Garcia had

10  ample opportunity to observe Petitioner's face from arm's length away.  (1 RT at 43-44.)

11  Although he refused to identify Petitioner at the preliminary hearing, he plausibly explained

12  that he failed to do so because he was afraid of retaliation.  (1 RT at 45.)  Garcia's general

13  description of Petitioner also matched that given by Galaz: short, Hispanic, and bald or very

14  short hair.  (1 RT at 44, 59; 1 CT at 45.)  And Galaz's description of Petitioner matched his

15  appearance when apprehended; gray t-shirt and blue jeans, out of breath, and walking with

16  a limp.  (1 CT at 45-46; 1 RT at 65, 78-80, 83.)  Petitioner's recent injury to his ankle also

17  was consistent with Garcia pushing his cart into Petitioner during their encounter.  (1 RT at

18  42, 48.)  Although Petitioner was no longer wearing the sweatshirt that Garcia had initially

19  seen him wearing, Petitioner may have abandoned the sweatshirt in an effort to avoid

20  apprehension.  Garcia's ability to identify Petitioner despite his change in clothes, which

21  Garcia recognized (1 RT at 46, 55), further supports the reliability of his identification.

22        Moreover, the jury was obviously aware that the case centered on whether Garcia's

23  identification was reliable.  Petitioner's counsel argued in closing that certainty was not an

24  indication of reliability, and she pointed to cases where DNA evidence had exonerated

25  defendants who had been convicted based on eyewitnesses who were 100 percent certain

26  of their identification.  (1 RT at 116-17.)  The prosecutor did not argue to the contrary.  He

27

28

noted that Garcia had been certain (1 RT at 99-100, 105), but the prosecutor never argued the identification was reliable or credible because of Garcia's certainty.

The language of the certainty factor included in CALJIC No. 2.92, i.e., "[t]he extent to which the witness is either certain or uncertain of the identification," did not offer any indication as to which way the jury should interpret the factor in judging the evidence.  The neutral language used to describe the factor minimized any prejudicial effect.

In light of the instruction given, the arguments of counsel, and the evidence as a whole, there is no reasonable probability Petitioner would have received a better result but for any alleged error in including certainty as a factor.  Thus, any error was harmless.

**ORDER**

IT IS HEREBY ORDERED that the Petition is denied.  Judgment shall be entered dismissing this action with prejudice.

IT IS SO ORDERED.


DATED: <u>April 10, 2013</u>                    <u>        */s/ John E. McDermott*        </u>
                                                                JOHN E. MCDERMOTT
                                                                UNITED STATES MAGISTRATE JUDGE